UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NAKIA BOND, JULIO RODRIGUEZ,  :
WILLIAM TORRES, CHRISTOPHER JASZCZAK,  :
and JASON SINGH on behalf of themselves and others  :  MEMORANDUM
similarly situated,  :  & ORDER
 :  15-CV-2403 (JBW) (SMG)
                          Plaintiffs,  :
 :
     -against-  :
 :
WELPAK CORPORATION, THOMAS RYAN,  :
officially and individually, and CHRISTOPHER FOX,  :
officially and individually,  :
 :
                          Defendants.  :
------------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:

## BACKGROUND

      This fee application arises from a collective action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") against defendants Welpak Corporation ("Welpak"), a moving and storage company based in Maspeth, New York; Thomas Ryan, its owner and chief executive officer; and Christopher Fox, a supervisory employee (collectively, "defendants"). Am. Compl. ¶¶ 1, 11-13, 17, Docket Entry 77. Plaintiffs Nakia Bond, Julio Rodriguez, William Torres, Christopher Jaszczak, and Jason Singh, all of whom were employed as art handlers and drivers for Welpak, asserted claims against defendants for failing to pay appropriate overtime compensation, failing to pay wages on a timely basis, and failing to provide wage notices.[1] *Id.* ¶¶ 16, 41-47, 48-53, 55-60, 62-65.

---

[1] These claims were initially brought by plaintiffs Bond, Rodriguez, and Torres. *See* Compl., Docket Entry 1. Jaszczak and Singh joined the case later as opt-in plaintiffs once a collective action was certified under Section 216(b) of the FLSA, 29 U.S.C. § 216. *See* Docket Entry 85; *see also* Docket Entries 95 and 98. A third opt-in plaintiff, Gordon Ison, also joined the action, but his claims were dismissed with the consent of the parties when he failed to appear for trial. *See* Docket Entries 133 and 134.

On May 26, 2015, defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs failed to plead sufficient facts concerning the weeks and hours for which they were allegedly not properly compensated. *See* Docket Entries 11-13. Defendants also argued that plaintiffs had not alleged sufficient facts to establish an employment relationship with the individual defendants. *Id.* On June 25, 2015, Senior United States District Judge Jack B. Weinstein denied defendants' motion and referred the matter to me to supervise discovery. Docket Entry 29. On August 10, 2015, defendants moved, again unsuccessfully, for summary judgment based upon the FLSA's motor carrier exemption, 29 U.S.C. § 213(b)(1). *See* Docket Entries 37-41, and 59. Plaintiff Bond thereafter moved to dismiss, on jurisdictional grounds, defendants' counterclaim for conversion against him, which was also denied. *See* Docket Entries 80-82, and 92.

Plaintiffs' claims were tried to a jury beginning on April 3, 2017, and the jury delivered a split verdict on April 6, 2017. Docket Entries 132-33, and 135-36. On April 4, 2017, upon consent of the parties, Judge Weinstein dismissed all claims brought by opt-in plaintiff Gordon Ison, as well as all claims asserted by any plaintiff against defendant Fox. *See* Docket Entry 134. Finding that defendants had substantially complied with NYLL's recordkeeping requirements, Judge Weinstein also dismissed plaintiffs' wage notice claims. Trial Transcript ("Trial Tr.") at 181, Declaration of Adam C. Weiss ("Weiss Decl."), dated May 5, 2017, Ex. C, Docket Entry 149-3. Nor did Judge Weinstein instruct the jury on plaintiff's frequency of pay claim; thus, the sole claims given to the jury were plaintiffs' claim for overtime pay brought pursuant to the FLSA. *See* Jury Charge at 5-6, Weiss Decl., Ex. D, Docket Entry 149-4.

The jury found that plaintiffs Jaszczak, Rodriguez, and Singh were not exempt from overtime pay and awarded them $928, $3,561, and $1,831, respectively, in damages. Trial Tr.

411-12.  By contrast, the jury found that plaintiffs Bond and Torres were exempt and accordingly awarded them no damages.  *Id.* at 413.  On April 17, 2017, defendants moved for judgment as a law ("JMOL").  *See* Docket Entries 140-42.  Judge Weinstein denied defendants' motion on June 8, 2017.  *See* Docket Entry 154.

Plaintiffs now move to recover attorneys' fees pursuant to Section 216(b) of the FLSA.  *See* Docket Entry 137.  With the parties' consent, Judge Weinstein has referred plaintiffs' motion to me for decision.  *See* Tr. of June 8, 2017 ("June 8 Tr."), at 15-16, Docket Entry 153; Order dated July 7, 2017, Docket Entry 156.

In support of plaintiffs' motion, their counsel, David C. Wims, has submitted a memorandum of law, his own declaration, and his contemporaneously-prepared time records reflecting his work on the case.  Docket Entries 138-39.  In his declaration, Wims details his litigation experience and career background, explaining that he has been admitted to practice in New York for thirteen years and that he has concentrated his practice in the area of employment law, including wage and hour litigation.  Declaration of David C. Wims ("Wims Decl.") ¶¶ 18-19, dated April 17, 2017, Docket Entry 139.  Wims seeks an award of $56,480 based on an hourly rate of $400.  *Id.* ¶ 17.

Plaintiffs also seek costs in the amount of $2,625.  *Id.*  On June 8, 2017, however, after hearing argument on defendants' JMOL motion, Judge Weinstein awarded plaintiffs $1,600 in costs.  June 8 Tr. at 14.

3

Defendants filed a memorandum of law, an affidavit, and exhibits in opposition to plaintiffs' motion for attorneys' fees. Docket Entries 149-50.[2] Defendants oppose plaintiffs' motion for a number of reasons. First, they argue, plaintiffs demanded far more in settlement prior to trial than they were awarded by the jury, demonstrating that plaintiffs overvalued their case. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Defs.' Mem.") at 1-2, Docket Entry 150. Next, defendants claim that in light of plaintiffs' settlement demands, the dismissal of plaintiffs' frequency of pay and wage notice claims, and the dismissal of all claims against defendant Fox, the total jury award of $6,320 was so minimal that plaintiffs do not qualify as prevailing parties entitled to attorneys' fees. *Id.* at 2, 5-6.

Defendants also contend that Wims seeks compensation for an unreasonable number of hours and at an excessive hourly rate. *Id.* at 7-15. For example, defendants object to Wims' seeking an hourly rate of $400 even for administrative tasks, such as creating exhibit books, and object as well to any award based on time Wims spent prosecuting unsuccessful claims. *Id.* at 11-12, 15. Defendants also argue that Wims' invoices are vague and thus do not permit meaningful review by the Court. *Id.* at 13-15. Defendants contend that Wims' experience, his limited success at trial, and prevailing rates in the Eastern District of New York suggest a maximum hourly rate of $250. *Id.* at 7-10. Moreover, defendants assert, because plaintiffs' success at trial was limited to a finding of liability against only two of the defendants, and because the amount sought in fees is disproportionate to the damages actually recovered at trial, the fee award should be reduced accordingly. *Id.* at 4-7, 17.

---

[2] Although defendants' counsel has styled his submission as made on behalf of all defendants, plaintiffs prevailed at trial only against defendants Welpak and Ryan, and these are therefore the only defendants jointly and severally liable for attorneys' fees.

After a careful review of Wims' billing records and the other materials submitted by the parties, plaintiffs' motion for attorneys' fees is hereby granted in part and denied in part and, for the reasons stated below, plaintiffs are awarded $29,925 in fees.

**DISCUSSION**

I. Legal Standards

A plaintiff who prevails in an action brought pursuant to the FLSA must be awarded reasonable attorneys' fees and costs. *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009). Unlike its civil rights counterpart, Section 216(b) of the FLSA provides that an award of attorneys' fees for prevailing parties is compulsory. *Compare* 29 U.S.C. § 216(b) ("The court in [an FLSA] action *shall*, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added), *with* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . [or] title VI of the Civil Rights Act of 1964 . . . the court, in its discretion, *may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.") (emphasis added). The Supreme Court has explained that a prevailing plaintiff is "one who has succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791 (1989). In other words, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792. "Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award[,] . . . not to the availability of a fee award *vel non*." *Id.* at 793.

Here, a jury having found in their favor, plaintiffs Jaszczak, Rodriguez, and Singh are prevailing parties entitled to recover their attorneys' fees. While defendants argue that the jury award was exceedingly small as compared to settlement demands made earlier in the case, it is undisputed that the jury found for three of the plaintiffs as against two of the three defendants and awarded damages to all three totaling $6,320. Thus, plaintiffs received at least *some* relief against *some* defendants and are entitled to an award of reasonable of attorneys' fees under FLSA. *See Struthers v. City of New York*, 2013 WL 5407221, at *2 (E.D.N.Y. Sept. 25, 2013) (holding that a jury award of $686 in damages rendered the plaintiff a "prevailing party"); *see also Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."); *Rinaldi v. Laird*, 2017 WL 2616921, at *1 (D. Conn. June 16, 2017) ("Plaintiff is not required to prevail against every defendant to earn the status of 'prevailing party.'").

I now turn to the reasonableness of the requested fees. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("A plaintiff who has prevailed in the litigation has established only his eligibility for, not his entitlement to, an award of fees.") (citation and internal quotation marks omitted).

II. "Presumptively Reasonable Fee"

The reasonableness of an attorney's requested fees is a matter within the district court's discretion. *Id.* Although both parties refer to the "lodestar" method of determining reasonable attorneys' fees, the Second Circuit has abandoned this terminology in favor of calculating a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Courts awarding attorneys' fees are instructed to

6

calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects "what a reasonable, paying client would be willing to pay." *Id.* at 183-84. In addition, courts should take into account case-specific variables such as

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Thus, for example, if some of the plaintiff's claims are dismissed or otherwise do not succeed, the fee may be reduced to take this circumstance into account. *Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 247 (E.D.N.Y. 2013). Ultimately, "[t]he party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015) (citation omitted).

A reasonable hourly rate is generally calculated by reference to the prevailing hourly rates in the district where the court sits for attorneys of "comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *Morales v. B&M Gen. Renovation Inc.*, 2016 WL 1266624, at *10 (E.D.N.Y. Mar. 9, 2016) (citation omitted), *report and recommendation adopted by*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016). In addition, courts must use their "experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case." *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (citation omitted).

7

Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

To that end, well-established Second Circuit doctrine requires that a fee application be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010) ("*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases. . . . such as where the records were consumed by fire or rendered irretrievable by a computer malfunction before counsel had an opportunity to prepare his application.").

### A. Reasonable Hourly Rate

As noted, courts in the Second Circuit follow the forum rule, which dictates that "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted). In the Eastern District of New York, courts in recent years have approved hourly rates from $300 to $450 for partners in law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates. *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (collecting cases); *In re Nassau Cty. Strip Search Cases*, 12 F. Supp. 3d 485, 498 (E.D.N.Y. 2014); *Hargroves v. City of New York*, 2014 WL 1271039, at *4 (E.D.N.Y. Mar. 26, 2014); *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 3766530, at *5 (E.D.N.Y. July 16, 2013). Courts in this district have awarded rates of

8

between $70 and $100 per hour for work done by paralegals. *Roberts v. United Parcel Serv., Inc.*, 2016 WL 1425766, at *2 (E.D.N.Y. Mar. 16, 2016), *report and recommendation adopted by*, 2016 WL 1441318 (E.D.N.Y. Apr. 8, 2016).

In support of his request for an hourly rate of $400, Mr. Wims, a solo practitioner, states that he has been practicing law for thirteen years, and that his experience includes extensive FLSA overtime litigation in state and federal courts. Wims Decl. ¶¶ 18-19. Wims asserts that, since he began practicing law in New York in 2004, he has litigated "at least one hundred wage and hour class and single plaintiff cases." *Id.* ¶ 19; Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees ("Pls.' Mem.") at 7, Docket Entry 138.

Although courts have approved rates as high as $450 per hour, "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their field." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012). For instance, in *Sass*, an employment discrimination case, the court allowed an hourly rate of $425 for a solo practitioner who had been practicing for thirty-three years and had litigated approximately 500 employment discrimination cases. *Sass*, 6 F. Supp. 3d at 263; *see also Favors v. Cuomo*, 39 F. Supp. 3d 276, 307 (E.D.N.Y. 2014) (approving an hourly rate of $450 for an attorney who had been practicing civil rights law since 1978 and served as the executive director of the Center for Law and Social Justice at Medgar Evers College). In contrast, a court found an hourly rate of $350 to be appropriate for a well-respected civil rights attorney with thirteen years of experience who had "litigated a large number of civil rights cases and is a first-rate trial lawyer." *Struthers*, 2013 WL 5407221, at *8.

9

Wims has considerable experience litigating FLSA wage and hour cases. Nevertheless, he has not achieved the stature to merit the highest rates awarded in this district. Indeed, attorneys with even more litigation experience are often denied such rates. *See Quiroz v. Luigi's Dolceria, Inc.*, 2016 WL 6311868, at *3-4 (E.D.N.Y. Oct. 28, 2016) (reducing requested hourly rate of $450 to $350 for partner with a decade of experience in employment litigation); *Gonzales v. Jane Roe, Inc.*, 2015 WL 4662490, at *6 (E.D.N.Y. July 15, 2015) (recommending, in an FLSA case, a reduced hourly rate of $225 for an attorney with ten years of litigation experience), *report and recommendation adopted by*, 2015 WL 4681151 (E.D.N.Y. Aug. 6, 2015); *Gortat v. Capala Bros.*, 2014 WL 3818614, at *7-8 (E.D.N.Y. Aug. 4, 2014) (awarding fees after a successful FLSA jury trial at a rate of $350 per hour to attorney with over seventeen years of experience in wage and hour litigation); *Cuevas v. Ruby Enters. of N.Y., Inc.*, 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) (reducing requested hourly rate to $350 for attorneys with sixteen and eighteen years of employment law experience after a five-day jury trial). Furthermore, while the issues in this case were more complex than those typically arising in an FLSA case, they were not so complicated that attorneys' fees should be increased on that basis; to the contrary, this case was relatively straightforward when compared to most civil rights litigation. Taking into account Wims' level of experience and other relevant case-specific variables, $350 per hour is a reasonable rate for Wims' time.[3]

---

[3] The authorities cited by plaintiffs in support of their requested hourly rate, Pls.' Mem. at 6, are readily distinguishable. For example, in *Adorno v. Port Auth. of N.Y. and N.J.*, 685 F. Supp. 2d 507, 513 (S.D.N.Y. 2010), the court approved an hourly rate of $550 hourly in a "complex and difficult" case to an attorney with more than thirty-five years of litigation experience who had submitted affidavits from six respected practitioners attesting that the hourly rate was reasonable for an attorney of his experience and stature. Similarly, in *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2008), the court found $600 per hour to be a reasonable rate for senior attorneys from an "outstanding" firm with decades of civil rights litigation experience. Finally, in *Heng Chan v. Sung Yue Tung Corp.*, 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007), the court awarded $450 per hour to a law firm partner with sixteen years of litigation experience, noting that attorneys from large firms with substantial overhead may merit "a relatively high hourly rate that reflects the institutional resources that made it possible for these attorneys to take on the case."

### B. Number of Hours Reasonably Expended

Wims seeks to be awarded fees for a total of 141.2 hours. Wims Decl. ¶ 17. As noted, an attorney requesting a fee award bears the burden of supporting his or her application by submitting "accurate, detailed and contemporaneous time records." *Garcia v. City of New York*, 2013 WL 5574507, at *6 (E.D.N.Y. Oct. 9, 2013) (citing *Carey*, 711 F.2d at 1147-48). To determine whether the number of requested hours is reasonable, the Court "must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Id.* at *6 (citation omitted). A court may reduce the award requested, and may do so by an appropriate across-the-board percentage, if the time records submitted for review are inadequate. *Id.* As explained above, courts may exclude any "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Mr. Wims has complied with *Carey* by submitting contemporaneous time records for his work on the case. *See* Pls.' Mem. at 7-8; *see also* Wims Time Sheets, Wims. Decl., Ex. 2, Docket Entry 139-2. Defendants object, though, to the number of hours for which Wims seeks reimbursement. Defs.' Mem. at 10. Specifically, defendants object to the amount of time billed for working on unsuccessful claims, arguing that Wims' time sheets fail to distinguish time spent prosecuting successful claims from time devoted to unsuccessful ones. *Id.* at 12. Defendants point to plaintiffs' unsuccessful motion to dismiss defendants' counterclaims and to time Wims spent unsuccessfully prosecuting claims of three plaintiffs, one of whose claims were dismissed when he failed to appear for trial and the other two of whom proceeded to trial but did not prevail. *Id.* at 11-12. Defendants also argue that a fee reduction is warranted because the amount sought in attorneys' fees is "grossly disproportionate" to the damages awarded at trial

and in light of rejected settlement offers made by defendants for more than was ultimately recovered at trial. *Id.* at 6-7, 16-17. Finally, defendants claim that Wims' time sheets are vague and contain "block billing," making it difficult to discern how much time was spent on appropriate attorney tasks as opposed to administrative ones, and how much time was spent on duplicative and unnecessary work. *Id.* at 13.

Defendants are correct that hours spent on unsuccessful claims may be excluded to the extent they are severable from those spent on successful ones. As the Supreme Court has explained, however,

> [S]uch unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Hensley*, 461 U.S. at 435. Nonetheless, courts "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Here, the only claims presented to the jury were plaintiffs' claims for overtime compensation; plaintiffs' other causes of action were dismissed at trial. Plaintiffs' wage notice and frequency of pay claims, however, are not readily severable from their overtime claims because each involved a common core of facts. Moreover, the contentious areas of this litigation centered not on plaintiffs' frequency of pay and wage notice claims, but rather on plaintiffs' overtime claims and, in particular, the applicability of the FLSA's motor carrier exemption. I therefore decline to reduce Wims' hours based on time spent working on unsuccessful claims. Nor should Wims' hours be reduced on account of some plaintiffs recovering at trial and others not. *See Jimenez v. KLB Foods, Inc.*, 2015 WL 3947273, at *3 (S.D.N.Y. June 29, 2015) (awarding compensation for hours worked on behalf of plaintiff whose claims were dismissed at the beginning of trial

because his claims "were largely similar to those of the other [p]laintiffs," and thus were "not readily severable").

I do, however, find that reductions are appropriate for time spent on plaintiffs' unsuccessful motion to dismiss defendants' counterclaims and in preparing for and attending plaintiff Ison's deposition, in light of his subsequent dismissal from the case. In addition, an across-the-board reduction is warranted because the recovery achieved by the prevailing plaintiffs was so limited compared to the relief sought in the complaint. As the Supreme Court has made clear, in determining an appropriate amount of attorneys' fees to award, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. "'A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims,' and 'both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve[,] are key factors in determining the degree of success achieved.'" *Sanchez v. I&A Rest. Corp.*, 2017 WL 2537814, at *6 (S.D.N.Y. May 22, 2017) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)).

In their amended complaint, plaintiffs alleged that they were not paid overtime compensation despite working for approximately sixty to seventy hours per week over several years, and that defendants further failed to pay them on time or provide them with wage notices as required by law. Am. Compl. ¶¶ 18-28. More specifically, plaintiffs alleged that they were not paid any overtime at all for working up to forty-five hours per week, and were paid only straight time for hours worked in excess of forty-five per week. Am. Compl. ¶ 22. Yet, at trial, two of plaintiffs' three claims were dismissed and, on the sole surviving claim, two of the plaintiffs were found to not be covered by the FLSA's overtime protections, while the other three were awarded damages totaling only $6,320, an amount far more modest than plaintiffs had

13

originally sought. In light of plaintiffs' quite limited success at trial, I find that an across-the-board reduction of 25% of the hours for which plaintiffs seek reimbursement is appropriate. *See Sanchez*, 2017 WL 2537814, at *6 (imposing 15% reduction to account for plaintiff's lack of success in FLSA action where plaintiff's FLSA claims were dismissed following a bench trial and plaintiff was awarded damages in the amount of $11,359.38 on his NYLL claims).

Defendants argue that a further reduction is warranted because the attorneys' fees sought are disproportionate to the damages awarded by the jury and in light of settlement offers rejected by plaintiffs for more than was ultimately obtained at trial. I do not agree. It is well-settled that attorneys' fees should not be reduced as a consequence of rejecting a settlement offer absent a showing of bad faith. *Siracuse v. Program for the Dev. of Human Potential*, 2012 WL 1624291, at *22 (E.D.N.Y. Apr. 30, 2012); *Heng Chan*, 2007 WL 1373118, at *7 (citation omitted). As the Second Circuit has cautioned, "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded." *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992). "Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing forward with their litigation." *Id.* at 140-41. Plaintiffs' decision to reject a pre-trial settlement offer thus does not warrant a reduction in the attorneys' fees awarded.

Nor is it proper to reduce plaintiffs' attorneys' fees merely because the requested fee award is larger than the amount of damages obtained at trial. As an initial matter, the fact that plaintiffs' salaries, and thus their awards for unpaid overtime, were relatively small, is not a proper basis for reducing plaintiffs' attorneys' fees award. *See Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 520 n.7 (S.D.N.Y. 2002). Moreover, it is well-established that a statutory fee award need not be proportional to the amount of damages recovered. *See City*

*of Riverside v. Rivera*, 477 U.S. 561, 564-65, 574 (1986) (affirming attorneys' fee award under 42 U.S.C. § 1988 that was approximately seven times greater than the amount of damages the plaintiffs were awarded); *see also Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 10 (S.D.N.Y. 2015) (observing that "the clear thrust of case law in this Circuit rejects the need for an FLSA attorney's award of fees to be proportional to the success achieved for the client[,]" and collecting cases). Indeed, as courts have noted, "the fee provisions contained in the FLSA . . . were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements." *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009); *see also Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) ("In FLSA cases, like other discrimination or civil rights cases, the attorneys' fee need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.").

Defendants also challenge the specificity of the billing invoices plaintiffs have submitted to the Court. In particular, they point to three entries on Wims' time sheets that they claim "are too general and lack any sense of detail." Defs.' Mem. at 14. One entry, for example, titled "Review docket sheet" appears three times, accounting for a total of .75 hours. Another entry, which accounts for .25 hours on July 2, 2015, is described as "Draft, serve and file letter to court." *See id.* According to the docket sheet, the letter plaintiffs' counsel filed with the Court on July 2, 2015, is a two-paragraph letter requesting that an initial conference be scheduled. *See* Docket Entry 20. The final entry defendants point to is for April 6, 2016, and it is described as "Travel to and attend court conf[,]" accounting for 1 hour. According to the docket sheet,

15

however, the conference held on April 6, 2016, was a telephonic conference that lasted only six minutes. *See* Docket Entry 99. Defendants also argue that plaintiffs are not entitled to fees at an attorney's hourly rate for time spent on administrative tasks. Defs.' Mem. at 15. One entry on Wims' time sheets that may include substantial administrative rather than legal work is for 6 hours spent on January 24, 2017, on "trial prep – prepare trial notebook, review with witnesses." *See* Wims Time Sheets at 1.

Defendants are correct that Wims' time sheets reveal occasional block billing, which makes it "difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) (citation omitted). Where billing records include a large number of block-billed entries, an across-the-board reduction of hours is appropriate. *Id.* at 142-43. Defendants are also correct that time spent for work that could have been performed by paraprofessional staff is not compensable at an attorney's hourly rate. *See DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, 2014 WL 3696020, at *9 (E.D.N.Y. July 22, 2014) ("Courts may . . . deduct time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents.") (citation and internal quotation marks omitted); *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 255 (S.D.N.Y. 2012) ("A court may reduce requested fees if the attorneys' . . . requests reflect work that could or should have been completed by a paralegal or secretary."). Wims' time sheets also contain several entries that purport to bill for administrative tasks such as serving and filing papers on defendants and with the Court. Rather than proceed on an item-by-item analysis concerning individual items billed, I apply an additional 10% across-the-board reduction to the hours for which plaintiffs seek reimbursement as a practical means of trimming the fee application. *In re Agent Orange Prod.*

*Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (citation and internal quotation marks omitted); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (affirming a 40% across-the-board reduction as "well within" the district court's discretion in awarding attorneys' fees to account for "items that are excessive, redundant, or otherwise unnecessary") (citation omitted); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming across-the-board reduction of 15% due to pervasive block billing in time entries submitted by counsel); *Bodon v. Domino's Pizza, LLC*, 2015 WL 3889577, at *10-11 (E.D.N.Y. June 4, 2015) (recommending, in a wage and hour case, a 10% across-the-board reduction in fees sought to account for block billing and hours billed at attorney rates for administrative tasks), *report and recommendation adopted by*, 2015 WL 3902405 (E.D.N.Y. June 24, 2015). I find, in addition, that the 1 hour billed for attending the telephonic conference on April 6, 2016, should be reduced to .1 hours to accurately reflect the time plaintiffs' counsel spent before the Court.

To summarize: plaintiffs seek an award of fees based on an hourly rate of $400 and 141.2 hours of Wims' time. For the reasons set forth above, Wims' requested hourly rate is reduced to $350. Wims spent 3 hours on plaintiffs' unsuccessful motion to dismiss defendants' counterclaims, as well as 6 hours preparing for and attending opt-in plaintiff Ison's deposition. Wims Time Sheet at 1. Accordingly, Wims' billable time is reduced by 9 hours to account for plaintiffs' severable, unsuccessful efforts in this litigation. Wims' billable time is further reduced by .9 hours to reflect the time actually spent before the Court during the conference held on April 6, 2016. Finally, for the reasons discussed above, an across-the-board reduction of 35% is applied to the amount of time for which plaintiffs' counsel seeks compensation. Accordingly,

17

I find that plaintiffs are entitled to attorneys' fees based on an hourly rate of $350 and 85.5 hours of billable work, for a total of $29,925.[4]

## CONCLUSION

In light of the foregoing, plaintiffs' motion for attorneys' fees is granted in part and denied in part, and, for the reasons set forth above, plaintiffs are awarded fees in the amount of $29,925. As noted above, Senior United States District Judge Weinstein has already determined that plaintiffs should, in addition, be awarded $1,600 in costs.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
September 26, 2017

*U:\#ZAK 2016-2017\Bond et al v. Welpak Corp. et al. (15cv2403) (JBW)\Motion for Attorneys' Fees Final.docx*

---

[4] As noted in the text, Wims' time sheets reflect 141.2 billable hours. 141.2 hours, reduced by 9.9 hours and then by 35%, results in 85.5 approved hours. At an hourly rate of $350, 85.5 hours results in a fee award of $29,925.